1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 11cr5849 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| NATHAN LEE SEAUX, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion to suppress statements filed by the Defendant Nathan Lee Seaux. (ECF No. 18).

## BACKGROUND FACTS

On December 22, 2011, the grand jury returned an indictment charging that "on or about May 4, 2010," the Defendant stole "approximately $13,325.08 worth of cash and checks and other commercial paper" from the United States Postal Service in violation of 18 U.S.C. § 1707. (ECF No. 1 at 1).

On August 23, 2010, Defendant was employed by the United States Postal Service at the Yuma Main Office in Arizona. (ECF No. 26-2 at 36). Defendant was not scheduled to work on that day and received a telephone call on his cellular phone from Sergio Velasco, Post Master for the Yuma Main Office. *Id.* Velasco was Defendant's direct supervisor. *Id.* at 37. Velasco told Defendant that the postal inspectors were in the office waiting for him. *Id.* at 36.

1  Defendant testified that Velasco told him that "I had to come to the post office to answer some
2  questions." *Id*. at 36.
3       Defendant arrived at the Yuma Post Office and Velasco led him to a small room where
4  Special Agents Eric Thomas and Marco Morales of the United States Postal Service Office of
5  the Inspector General were waiting. *Id*. at 40-41. Velasco left Defendant with Agent Thomas
6  and Agent Morales. *Id*. at 40. Agent Thomas motioned for Defendant to sit down and
7  introduced himself. *Id*. at 40, 59. Agent Thomas was wearing street clothes with a gun
8  holstered to his hip. *Id*. at 41. Agent Morales was wearing street clothes and was not visibly
9  armed. *Id*. at 41. Agent Thomas testified that the Defendant "sat in a chair, closest to the door,
10 but near us as well." *Id*. at 6. Agent Thomas testified that "this is my standard practice [. . .]
11 I don't want anyone to believe that they are not free to leave, so I have them sit closest to the
12 door." *Id*. The door to the room was closed but not locked. *Id*. Agent Thomas testified that
13 the doorway was not obstructed on either side. *Id*. at 7. Agent Thomas testified that the agents
14 did not threaten or handcuff the Defendant. *Id*. at 7. Agent Thomas testified that the agents
15 did not draw their weapons at any point during the interview. *Id*. Agent Thomas testified that
16 the interview was not recorded. *Id*. at 26.
17       Agent Thomas advised the Defendant that he was there to talk "about the shortages at
18 the Hillcrest Post Office" and that he had "some questions for [the Defendant]." *Id*. at 23, 41.
19 Agent Thomas asked the Defendant about his military background, his family and his interest
20 in football. *Id*. at 41-42. Agent Thomas testified that this was "small talk" unrelated to the
21 investigation and not meant to be threatening in any manner. *Id*. at 9. Agent Thomas testified
22 that he informed the Defendant that the requested interview "was voluntary and that he was
23 free to leave at any time." *Id*. at 7. Agent Thomas testified that he did not give the Defendant
24 a *Garrity*[1] advisal at any time before or during the interview. *Id*. at 21. Agent Thomas testified
25 that he did not "mention anything about his job, anything like that" or that Defendant would
26 be fired if he refused to answer questions. *Id*. at 22.
27
28       [1] *Garrity v. New Jersey*, 385 U.S. 493 (1967) (Police officers under investigation were given the choice either to incriminate themselves or to forfeit their jobs under a New Jersey statute).

1 Agent Thomas testified that he informed the Defendant of his *Miranda* rights; that Defendant read the rights aloud from a pre-printed form, signed and dated the form; and that Defendant stated orally that he understood his rights. *Id*. at 10, 42. Defendant dated the *Miranda* form and indicated the time as "11:52 a.m." (Exhibit 21). Defendant subsequently wrote and signed a statement. (Exhibit 22). Defendant dated the statement and indicated the time as "1:30 p.m." *Id*.

Defendant testified that he was not given his *Miranda* rights prior to writing the statement. (ECF No. 26-2 at 43). Defendant testified that he did not read and sign the *Miranda* form until after he had already written and signed his statement. *Id*. at 43-44. Defendant testified that Agent Thomas told him the time to write down on the *Miranda* form and on his statement and testified that "whatever [Agent Thomas] told me to do, that is what I did." *Id*. at 48. Defendant testified that he is forty years old but had "never signed [. . .] a document that says date and time before." *Id*.

Defendant testified that he was never given a *Garrity* warning. *Id*. at 55. Defendant testified that he believed that Velasco was giving him "directions" to come in to the office and speak with the Postal Inspector. *Id*. at 37. Defendant stated that he was told in training thirteen years ago that "you have to answer [Postal Inspectors'] questions or you could be subject to being fired." *Id*. at 38-39. Defendant testified that "[Velasco] never stated" that he would be subjected to disciplinary action if he refused to submit to questioning. *Id*. at 45.

Defendant testified that the small talk at the onset "put me on edge." *Id*. at 42. Defendant testified that a file cabinet was "blocking" the doorway. *Id*. at 59. Defendant testified that "I would have to walk around to get out of the room is what I meant, like blocking." *Id*. at 59. Defendant testified that he was not handcuffed at any point during the questioning and left the interview on his own. *Id*. at 42, 45.

Agent Thomas testified that he has "been in law enforcement for 21 years, been an agent for going on 10 years." *Id*. at 62. Agent Thomas testified that he has never interviewed a suspect without first advising the person of his or her *Miranda* rights. *Id*. Agent Thomas testified that "[m]aybe about 40 minutes or so, 40 to 45 minutes approximately" elapsed

between the time that the Defendant signed the *Miranda* form and the time that the Defendant wrote his statement. *Id*. Agent Thomas testified that "I've never told anyone to do anything incorrect on a form." *Id*. at 63.

## CONTENTIONS OF THE PARTIES

Defendant contends that his statements should be suppressed on the grounds that: 1) the agents failed to advise him of his *Garrity* rights; 2) he did not knowingly and intelligently waive his *Miranda* rights; and 3) the agents' coercive tactics rendered his statements involuntary.

The Government contends that Defendant's *Garrity* claim fails on the grounds that no rule or statute mandated his firing and he was never told that refusal to answer questions could lead to adverse employment consequences. The Government contends that the Defendant was informed at the onset that the interview was voluntary and that he was free to leave. The Government asserts that the Defendant was properly informed of his *Miranda* rights and made a knowing and intelligent waiver of his rights. The Government contends that there are no facts to support any coercive tactics.

## DISCUSSION

**1. Defendant's *Garrity* Claims**

The United States Supreme Court in *Garrity* concluded that the Fourteenth Amendment "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). In *Garrity*, each police officer was warned "that if he refused to answer he would be subject to removal from office." *Garrity*, 385 U.S. at 494. New Jersey law required the discharge of any public employee "who refuses to testify . . . upon the grounds that his answer may incriminate him or compel him to be a witness against himself." *Id*. at 494. The Supreme Court found that "[t]he choice imposed on petitioners was one between self-incrimination or job forfeiture." *Id.* at 496. The Court concluded that the circumstances were "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." *Id*. at 497, quoting *Miranda v. State of Arizona*, 384 U.S. 436, 464-65 (1966). The Supreme Court "noted

that the constitutional violation arose . . . when that employee was required to waive his privilege against self-incrimination" while answering his or her employer's job-related questions. *Gardner v. Broderick*, 392 U.S. 273, 278 (1968).

"In a series of cases involving the Fifth Amendment rights of public employees, the Supreme Court has made clear that public employees cannot be compelled to choose between providing unprotected incriminating testimony or losing their jobs." *Aguilera v. Baca*, 510 F.3d 1161, 1171 (9th Cir. 2007). In *Aguilera*, sheriff's deputies under investigation had "an affirmative duty to cooperate during [. . .] an investigation" pursuant to the Sheriff's Department's Manual of Policies and Procedures. *Aguilera*, 510 F.3d at 1165. The failure of a deputy to cooperate could "subject a deputy to administrative discipline." *Id*. In *Aguilera*, the commanding officer informed the deputies that "the only way to avoid criminal charges was to 'come forward now,' which they understood to mean to give an immediate and voluntary statement to the ICIB investigators without any protection against later use of such statements against them." *Id*. at 1166. However, "[n]o deputy was asked to waive his or her right against having any statement used against him or her in a later criminal proceeding, and no deputy gave either a compelled or voluntary statement at this time." *Id*. The Ninth Circuit concluded that "the supervisors did not violate the deputies' Fifth Amendment rights when they were questioned about possible misconduct, given that the deputies were not compelled to answer the investigator's questions or to waive their immunity from self-incrimination." *Id*. at 1172.

In this case, there is no evidence of the existence of a departmental rule or statute mandating termination of employment for refusal to answer questions. Agent Thomas testified that he told Defendant that the interview was voluntary and advised the Defendant of his *Miranda* rights. (ECF No. 26-2 at 7, 10). Defendant testified that Agent Thomas did not threaten him with adverse employment consequences for failure to answer his questions. *Id*. at 45. The Court concludes that Defendant was not presented with a "choice . . . between self-incrimination or job forfeiture." *Garrity*, 385 U.S. at 496. Defendant testified that he believed he could be disciplined for refusing to answer a postal inspector's questions based upon what

1 he was told during training approximately thirteen years ago. (ECF No. 26-2 at 37-39, 55).
2 However, Defendant's subjective fears of termination are not sufficient to require suppression
3 under *Garrity*. *See United States v. Indorato*, 628 F.2d 711, 716 (1st Cir. 1980) ("In all of the
4 cases flowing from *Garrity* there are two common features: (1) the person being investigated
5 is explicitly told that failure to waive his constitutional right against self-incrimination will
6 result in his discharge from public employment . . . and (2) there is a statute or municipal
7 ordinance mandating such procedure").

**2. *Miranda* rights**

In order for inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985). In order to be knowing and intelligent, "the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Barton*, 475 U.S. 412, 421 (1986). There is a presumption against waiver. *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979). The Government bears the burden of establishing the existence of a valid waiver of *Miranda* rights. *Id*. The validity of a waiver depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the defendant. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). "Several factors to consider are (i) defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).

The record shows conclusively that Agent Thomas accurately informed the Defendant of his *Miranda* rights; that the Defendant indicated that he understood and waived those rights; and that the Defendant completed a written Statement of Rights and Waiver form prior to questioning. The Court finds that the Defendant signed the *Miranda* form and the statement

at the times indicated on the documents. The Court finds the testimony of Agent Thomas that he informed the Defendant of his *Miranda* rights before the Defendant signed the waiver at the initiation of the interview prior to questioning is credible testimony. The Court finds Defendant's testimony that he was informed of his *Miranda* rights after questioning and after signing his statement is not credible testimony. The Court finds the testimony of the Defendant that Agent Thomas instructed him to indicate inaccurate times on the waiver and the statement is not credible testimony. This Court finds that the facts and circumstances of this case establish that the Defendant was properly informed of his *Miranda* rights and he knowingly, intelligently, and voluntarily waived his *Miranda* rights prior to questioning.

**3. Coercive Tactics**

The Government must prove that a confession is voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 489 (1972). In order to be voluntary, a confession must be "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). "A confession 'must not be extracted by any sorts of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981) quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).

"In evaluating voluntariness, the 'test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'" *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002) (quoting *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1991)). "Law enforcement conduct which rendered a confession involuntary does not only consist of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear 'a rational intellect and a free will.'" *Tingle*, 658 F.2d at 1335 quoting *Blackburn*.

The evidence in the record shows that Agent Thomas informed the Defendant that he had some questions about the stolen money and informed the Defendant that he was free to leave at any time. Defendant was not placed under arrest or handcuffed at any point during

1  the interview. Defendant sat in a chair near the door and was not physically restrained. The
2  door to the interview room was not locked during the interview. Agent Thomas informed the
3  Defendant of his *Miranda* rights and provided the Defendant with a written waiver. Defendant
4  indicated that he understood his rights and signed the waiver. Defendant subsequently wrote
5  and signed a statement. Agent Thomas did not verbally or physically threaten Defendant at
6  any point during the interview. Defendant left on his own at the conclusion of the interview.
7  There is no evidence that Agent Thomas coerced or otherwise induced the Defendant to make
8  a statement. This Court finds that under the totality of the circumstances there are no facts
9  which show that the government obtained the Defendant's statement by "coercion or improper
10 inducement so that the [Defendant's] will was overborne." *Male Juvenile*, 280 F.3d at 1022.
11       IT IS HEREBY ORDERED that the motion to suppress statements filed by Defendant
12 (ECF No. 18) is DENIED.
13 DATED: August 23, 2012

**WILLIAM Q. HAYES**
United States District Judge